UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ERIKA M BLOOMER,

    Plaintiff,

    v.

THOR MOTOR COACH INC,

    Defendant.

Case No. 3:23-CV-771-CCB

## OPINION AND ORDER

Before the Court is Defendant Thor Motor Coach Inc.'s ("Thor") Motion for Summary Judgment. (ECF 40). Plaintiff Erika M. Bloomer opposes this motion. (ECF 50). The Court grants this motion for the following reasons.

### I.    RELEVANT BACKGROUND

This is a recreational vehicle warranty case. In her operative complaint, Ms. Bloomer alleges that her Thor-manufactured recreational vehicle ("RV") was defective. (ECF 35). She seeks relief on six counts: (1) breach of warranty and/or contract, (2) violation of the Magnuson-Moss Warranty Act, (3) breach of contract for workmanlike repair, (4) spoliation, (5) fraud, and (6) violation of the Indiana Deceptive Consumer Sales Act. (*Id.*) Thor now moves for summary judgment, arguing that Ms. Bloomer cannot produce sufficient evidence for her claims to reach a jury on any of these theories of liability.

The undisputed facts are these:

Ms. Bloomer purchased a new 2022 Thor Magnitude RS36 RV ("the RV") from a dealer in April 2022. (ECF 40-1 at 20). As the final stage manufacturer of the RV, (ECF 36 at ¶¶ 4, 7), Thor provided Ms. Bloomer with a *Limited Warranty* covering portions of the RV for the first year after purchase, (ECF 5-1 at 10–13). It also provided her with a *Structural and Lamination Limited Warranty* covering specific portions of the RV's structure and lamination. (*Id.* at 14–17). Ms. Bloomer signed a Warranty Registration Form that includes an acknowledgment that the signer received, read, and agreed to the terms and conditions of the *Limited Warranty* and the *Structural and Lamination Limited Warranty*. (ECF 40-1 at 82).

Ms. Bloomer took the RV for service at General RV four times between May 2022 and March 2023. (ECF 49-1 ¶¶ 12–18). During the last service visit, the RV remained with General RV from March 2023 until October 2023. (*Id.* ¶ 18). In September 2023, while the RV was still being serviced by General RV, technicians from Thor came to General RV and assisted with General RV's attempts to repair the RV. (ECF 40-6 ¶¶ 3–4). The Thor technicians removed the RV's front cap, found some loose and broken screws, and reattached the cap. (*Id.* ¶¶ 4, 11).

Unlike the walls and roof of the RV, the front cap is not a laminated component. (ECF 40-3 ¶ 13). It is a fiberglass component attached to the walls, frame, and body of the RV with brackets and screws. (*Id.* ¶¶ 6–8). Both parties agree that the front cap does not have any framing inside it, under it, or anywhere supporting it, (*id.* ¶¶ 7–9), though they dispute whether this is the way it should be, (ECF 49 ¶¶ 15, 17).

In late July and early August 2023, while the RV was still being serviced by

General RV, Ms. Bloomer and her husband reached out to PatRick's Auto as a potential alternative service provider. (ECF 40-2 at 45:2–7; 44:20–45:1). Based on conversations with PatRick's Auto, Ms. Bloomer and her husband believed that PatRick's Auto would not be able to work on the front cap. (*Id.* at 46:1–47:7; ECF 49-1 ¶¶ 3–5). Ultimately, the Bloomers did not bring the RV to PatRick's Auto for service. (ECF 40-2 at 46:1–47:7). Nor did they bring it to any other service provider. (ECF 40-1 at 44:10–14). Instead, they left the RV with General RV to be repaired. (ECF 40-2 at 47:12–18). Though Ms. Bloomer still had complaints when General RV finished with the RV, she did not engage any other service provider to make additional repairs to the RV. (*Id.* at 47:22–48:8).

Over the course of the four service visits, the Bloomers sought repair of many different issues with the RV. (ECF 40-2 at 21:13–23 at 31:13–23, 25:15–26:1, 28:19–24, 30:4–17, 34:9–35:6; ECF 49-4; ECF 49-9; ECF 49-10; ECF 49-15). Between service visits, the Bloomers were generally able to use the RV for camping even as they believed that issues with the RV persisted. (ECF 40-1 at 69:6–70:25). But after the RV was returned from its last service period with General RV, Ms. Bloomer's belief that the front cap of the RV was not successfully repaired caused her to stop using the RV. (ECF 40-1 at 67:4–7; 71:16–18).

Ms. Bloomer asserts that the front cap issue with the RV is "structural." (ECF 40-1 at 60:24–60:2). But Ms. Bloomer and her husband admit that they are not RV experts. (*Id.* at 61:16–24; ECF 40-2 at 47:17–18; 68:4–8). Ms. Bloomer's expert, Steven Paul, identified several issues with the RV, and opined that all of those issues could be

repaired. (ECF 40-7 at 44:22–45:14). And at his deposition, Mr. Paul confirmed that the

front cap complaint was not a structural issue:

> Q: So this is not a structural problem with the RV, it's just missing sealant; right?
>
> A: Right but that quarter-inch gap by 6 inches allows an enormous amount of water to enter the cabin.
>
> Q: Right, that's a problem for sure. But that's not a problem for the structure of the motor?
>
> A: No. That's basically a body concern. It was just easier to explain what that was in—like that.
>
> Q: So whatever water has come in and caused whatever damage has been caused, that would need to be dealt with. But as far as correcting this problem with the front cab, the correction is to fill in the sealant that's missing; right?
>
> A: It is, yes. But the sealant—the amount of sealant and the quality of the sealant that is currently installed—I mean, it basically all needs to be removed and redone because of its lack of craftsmanship. That's the nicest way to put it. It doesn't look good at all.

(ECF 40-7 at 52:13–53:20). In his supplemental expert report, Mr. Paul clarified that his

"prior testimony that the unit had 'no structural damage' was intended to address

chassis structural damage to the chassis main frame, not coach-body structural integrity

defects." (ECF 49-6 at 10). Based on "new discovery," he concluded that the RV

contained "a coach-body structural integrity defect at the front cap and adjoining coach

interfaces."[1] (*Id.*)

---

[1] In Ms. Bloomer's response to Thor's statement of undisputed facts, she contends that while Mr. Paul's testimony was "interpreted to mean the front cap was not a structural issue," his supplemental expert report "clarifie[s] this testimony and opines the opposite." (ECF 49 ¶ 35). First, Mr. Paul's initial testimony on this matter is not susceptible to alternative interpretations. (*See* ECF 40-7 at 52:13–53:20 (twice confirming in explicit terms that the front cap issue was not structural)). Second, it is not clear that

4

Thor has submitted several affidavits supporting the conclusion that the front cap issue is not structural. In an affidavit, Mark Stanley, the Consumer Affairs Manager for Thor, states that the front cap issue cannot be structural because the front cap itself is not "structural or otherwise affected by the structure of the motorhome." (ECF 40-3 ¶¶ 5–10). He explains that the fiberglass front cap of the RV contains no framing structure within it. (*Id.* ¶ 7). Instead, it is attached to the frame, walls, and body of the RV with screws and brackets. (*Id.*) Denis Forys, a Field Service Technician for Thor, concurs, stating the front cap "is not a structural component" and lacks any "framing inside it, under it, or otherwise associated with it." (ECF 40-6 ¶ 7). Scott Craig, an engineer contracted by Thor to inspect the RV, agrees with both Mr. Stanley and Mr. Forys that the front cap "is not a structural component" and adds that "the steel and aluminum framing" of the RV did not seem to have "anything to do with the front cap problems." (ECF 40-8 ¶¶ 7–8).

Ms. Bloomer purports to contest this in her response to Thor's statement of undisputed facts. But the only evidence she cites in opposition is a work order in which the General RV service technician lists the cause of front cap flexing as "lack of structure support allowing fo *[sic]* cap to flex too much causing mounting srews *[sic]* to break, sipde *[sic]* cracks in front cap." (ECF 49-4 at 1). Even reading this work order in the light most favorable to Ms. Bloomer, it does not conflict with Thor's evidence that the front

---

Mr. Paul's supplemental expert report contradicts his deposition testimony. He writes in his supplemental report that he "did not intend that statement to mean the coach *body* was free of structural integrity defects," (ECF 49-6 at 3 (emphasis added)), but that does not conflict with his testimony that the front cap issue was "not a structural issue" but a "*body* concern," (ECF 40-7 at 52:13–53:20 (emphasis added)).

cap issue is not structural because it is not part of the structure of the RV. At most, it suggests that the internal structure of the front cap component was failing.

Relatedly, both parties agree that General RV is a Thor-authorized dealer. (ECF 54 ¶¶ 44–45). But Thor does not control what is written on General RV's repair records when it works on Thor RVs. (ECF 40-4 ¶ 5). The wording General RV uses in those records is chosen by dealership employees, who sometimes use different words for the same issue depending on who is creating the record. (*Id.* ¶¶ 8–9).

II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also*

6

*United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.   ANALYSIS

Thor raises six arguments in support of summary judgment: (1) Bloomer failed to exhaust her remedies as required by the warranties, (2) she cannot state a claim under the warranties, (3) her implied warranty claims necessarily fail, (4) her Magnuson-Moss claim fails without a warranty claim, (5) her breach of contract claim is unsupported and thus fails, and (6) her allegations against General RV cannot support any claim against Thor.

#### a.   Exhaustion of Remedies

Thor first argues that it is entitled to summary judgment because Bloomer failed to exhaust her remedies as required by Thor's written warranties.

7

The *Limited Warranty* and the *Structural and Lamination Limited Warranty* both provide a primary remedy and a back-up remedy for covered defects. The primary remedy is the same for both:

> TMC's sole and exclusive obligation is to repair any covered defects discovered within the warranty coverage period if:
>
> > (1) within **10 days** of your discovery of a defect you notify TMC or an authorized dealership of the defect;
> >
> > (2) **AND** you deliver your motorhome to TMC or an authorized dealership (at your expense) . . . .

(ECF 5-1 at 13, 17). If that primary remedy fails, both warranties provide the same back-up remedy:

> If the primary repair remedy fails to successfully cure any defect after a reasonable number of repair attempts, your sole and exclusive remedy shall be to have TMC pay an independent service shop of your choice to perform repairs to the defect **OR** if the defect is incurable, have TMC pay diminished value damages.

(*Id.*) Both warranties emphasize that

> [t]he repair remedy and the back-up remedy **MUST** both be exhausted **AND** these remedies must fail to fulfill their essential purpose before you can seek other legal or equitable remedies for breach of this express warranty or for breach of any implied warranty.

(*Id.*)

The Court has already dismissed Ms. Bloomer's claim under the *Limited Warranty*. (ECF 10 at 13–14). And the parties do not seem to dispute that Ms. Bloomer complied with the terms of the primary remedy. So the question before the Court is whether she exhausted her back-up remedy as required by the *Structural and Lamination Limited Warranty*.

This back-up remedy provides two options: an RV owner may either (1) choose an independent shop to repair the defect at Thor's expense, or (2), if the defect is incurable, seek diminished value damages from Thor. These two options are the only ways to exhaust the back-up remedy, and the warranty expressly conditions any further legal or equitable relief on the exhaustion of the back-up remedy.

The parties do not dispute that Indiana law applies. To prevail on a breach of warranty claim in Indiana, a plaintiff must prove (1) the existence of a warranty, (2) breach, (3) causation, and (4) damages. *Mathews v. REV Recreation Group, Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). A warranty can be breached "[w]here circumstances cause an exclusive or limited warranty to fail of its essential purpose." Ind. Code § 26-1-2-719(2).

Written warranties are contracts, and like contracts, the Court will construe and enforce written warranties according to their terms. *See Andersen v. Thor Motor Coach, Inc*, 402 F. Supp. 3d 467, 481 (N.D. Ind. 2019). Indiana law allows parties to contract for limited, exclusive remedies within a warranty. Ind. Code § 26-1-2-719. A limited warranty does not fail of its essential purpose if a customer does not avail themselves of the contract's back-up remedy. *Mathews*, 931 F.3d at 622. But a remedy will fail of its essential purpose "when an unexpected circumstance arises and neither party accepted the risk that such circumstance would occur." *Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1093 (N.D. Ind. 2022) (quoting *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 955 (Ind. 2001)). Thus, this Court may properly dismiss breach of warranty claims for failure to exhaust a back-up remedy the parties

agreed must be exhausted before commencing litigation, but not if the back-up remedy failed of its essential purpose. *See Mathews*, 931 F.3d at 622.

The first critical question, then, is whether the warranty's back-up remedy was exhausted. Ms. Bloomer maintains that it was. In support, she points out that she and her husband reached out to PatRick's Auto to service the RV while it was still with General RV. This, she argues, makes *Mathews* a poor guide for these facts because in *Mathews*, the plaintiff proceeded to litigation without ever contacting an independent repair shop. *See* 931 F.3d at 621. She urges the Court to consider instead *Greene v. Thor Motor Coach, Inc.*, 2025 U.S. Dist. LEXIS 58659, *14–17 (N.D. Ind. Mar. 28, 2025) (finding an identical back-up remedy exhausted after the plaintiff called multiple repair shops who refused to work on the RV); *Morris v. Jayco, Inc.*, 2025 U.S. Dist. LEXIS 900, *18–20 (N.D. Ind. Jan. 3, 2025) (finding a similar back-up remedy exhausted after a plaintiff attempted to engage two different repair facilities to work on his RV and was unsuccessful); and *Neary v. Thor Motor Coach, Inc.*, 2022 U.S. Dist. LEXIS 160150, at *12–14 (N.D. Ind. Sep. 6, 2022) (finding back-up remedy failed of its essential purpose because the independent repair shop recommended the manufacturers perform the repairs).

None of these cases quite fit. In *Neary*, the independent repair shop told the plaintiffs that it could not repair the RV and recommended that the plaintiff take the RV back to the manufacturers for repairs. 2022 U.S. Dist. LEXIS 160150, *13. Though the independent repair shop did not "explicitly state that the defects were 'uncurable,'" the

court treated the shop's referral back to the manufacturers as sufficient to frustrate the essential purpose of the remedy. *Id.*

*Morris* and *Greene* involve slightly different facts. In *Morris*, the plaintiff contacted two repair shops. 2025 U.S. Dist. LEXIS 900, *18. One never responded, and the other told the plaintiff that it "couldn't guarantee a fix on the door and would have a hard time replacing it." (*Id.*) Similarly, in *Greene*, the independent repair shops the plaintiff contacted told him that they did not work on electrical issues or on RVs the size of his. 2025 U.S. Dist. LEXIS 58659, *15. In both cases, the plaintiffs contacted multiple shops and received the response that they either could not guarantee a fix or did not work on the type of issue the plaintiffs had.

Evidence provided by Ms. Bloomer shows that her case is different. First, she contacted only one repair shop. And second, according to her summary of her conversation with PatRick's Auto, she was told that PatRick's could do "small repairs but cannot do the main issue on the cap and body work it would have to go to a local body repair shop." (ECF 49-3). Unlike *Neary*, PatRick's did not refer Ms. Bloomer back to the manufacturers for the repairs.[2] And unlike *Greene* and *Morris*, PatRick's did not simply inform the Bloomers it would not or could not work on their RV. Instead, the PatRick's representative essentially informed Ms. Bloomer that she had called the

---

[2] Ms. Bloomer's summary states that the PatRick's representative "said they would be telling thor to take it back with the list of repairs and the cap coming off he said man that's not good," but this appears to be the PatRick's representative suggesting that, as an alternative to a body repair shop, Ms. Bloomer should attempt to return the RV to Thor, as opposed to referring her to Thor for the repairs. (ECF 49-3).

wrong kind of shop for her front cap issue. What Ms. Bloomer needed was not PatRick's but "a local body repair shop." (*Id.*)

Despite this, both parties agree that Ms. Bloomer never took the RV to an independent body shop or any other repair shop. Nor did she take it to PatRick's Auto for the small repairs she believed PatRick's could make.

A back-up remedy fails in its essential purpose "when an unexpected circumstance arises and neither party accepted the risk that such circumstance would occur." *Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1093 (N.D. Ind. 2022) (quoting *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 955 (Ind. 2001)). Here, there is no such novel circumstance. Ms. Bloomer called one independent repair shop. That shop told her that she had contacted the wrong type of shop and suggested that she contact a body repair shop instead. She did not. This solution would have enabled the warranty to serve its purpose. Her failure to pursue that solution does not cause the warranty's essential purpose to fail.[3]

Ms. Bloomer also argues that she complied with the alternative option under the back-up remedy by declaring the RV's defects incurable and demanding diminished value damages. But, as she acknowledges, her expert testifies that the issues with her

---

[3] Ms. Bloomer argues that for the back-up remedy to be satisfied, "repairs need only be sought out and the independent repair shops of the consumer-plaintiff's choosing need only refuse to perform the repairs under the conditions set forth in the warranty." (ECF 50 at 8). But this broad interpretation of the back-up remedy would lead to absurd results. If, for instance, a shop worked only on trailers and not motorhomes, and a plaintiff brought her motorhome into the shop for service, she could not credibly claim to have exhausted the back-up remedy because this shop of her choosing refused to perform repairs. Indiana law "imposes an obligation of good faith" on the performance of every contract governed by its version of the Uniform Commercial Code. Ind. Code § 26-1-1-203. Giving up on a remedy after one call to the wrong type of repair shop does not square with this duty of good faith performance.

RV could be repaired. While she is right that the warranty does not define "incurable," she has not introduced evidence that the RV's defects were incurable. In fact, her expert's testimony cuts the other way. This argument fails.

Ms. Bloomer failed to exhaust the warranty's back-up remedy, and she has failed to establish that it failed of its essential purpose. Thus, summary judgment for Thor is appropriate on this ground.

### b. Structural Components

Next, Thor argues that it is entitled to summary judgment because Ms. Bloomer's allegations do not relate to any of the items covered under the *Structural and Lamination Limited Warranty*.

The *Structural and Lamination Limited Warranty* provides coverage for

> **ONLY** the steel or aluminum frame structure of the sidewalls (excluding slideouts and ramp doors), roof, rear wall, front wall, and floor **AND** the exterior laminated surfaces of the sidewalls (excluding slideouts and ramp doors), roof, rear wall, front wall, and floor.

(ECF 5-1 at 15). Ms. Bloomer argues that summary judgment on this issue is inappropriate for three reasons: (1) she and her husband testify that the RV's front cap issue is structural, (2) one of General RV's work orders states that the cause of the front cap issue was "lack of structure support," and (3) Ms. Bloomer's expert believes that the front cap problem is a structural defect.

It is the role of the Court to construe any unambiguous terms of the *Structural and Lamination Limited Warranty*. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 859 (7th Cir. 2007). The Court begins by looking to the language of the

warranty itself. *Andersen v. Thor Motor Coach, Inc.*, 402 F. Supp. 3d 467, 481 (N.D. Ind. 2019) ("Warranties are contracts, and provide benefits only as defined by their terms."). Here, the plain text of the warranty is not ambiguous: only the "steel or aluminum frame structure" and the "exterior laminated surfaces," both subject to certain exclusions, are covered. The front cap is not steel. It is not aluminum. And it is not made of laminated components. Both parties agree that it is a fiberglass component that is attached to the RV with brackets and screws. So, based on the plain language of the warranty, it does not appear that the front cap fits within its terms.

Ms. Bloomer points that she and her husband testified that the front cap issue is structural. Therefore, she argues, there is evidence that the front cap issue is structural, creating a genuine issue of material fact. But the warranty does not provide blanket coverage for structural issues with no elaboration. Instead, it defines the terms of its coverage. Ms. Bloomer and her husband do not purport to believe that the front cap is part of the "steel or aluminum frame structure" or the "exterior laminated surfaces." Instead, they opine generally that the issue is "structural in nature." (ECF 50 at 10). To state the obvious, the fact that the warranty contains the term "structural" in its title is not enough to counteract its defined terms of coverage. And a general allegation that the front cap issue is "structural" does not create a genuine issue of material fact over whether the warranty covers the front cap issue.

Nor does the word choice of a single work order from General RV. This work order, which both parties agree was not produced by Thor, states that the cause of the front cap flex is a "lack of structure support allowing fo *[sic]* cap to flex too much . . . ."

14

(ECF 49-4 at 1). But it does not appear from the evidence that the front cap was designed with or intended to have any steel or aluminum framing to provide structural support. (*See* ECF 40-3 ¶¶ 7–9, ECF 40-6 ¶¶ 7–8, ECF 40-8 ¶¶ 7–9). So any "lack of structure support" identified by the work order would be structural in the generic sense, pertaining to the internal rigidity of the front cap, not structural in the sense defined by the warranty. Though Ms. Bloomer asserts, based solely on this work order, that the front cap "should have a support that is missing," such an allegation would support claims of a design defect, not a manufacturing defect. This warranty only covers "defects in materials and construction," (ECF 5-1 at 15), and allegations of design defects cannot support a claim under a warranty limited to manufacturing defects. *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613–14 (E.D. Mich. 2017) (collecting cases).

Lastly, Ms. Bloomer argues that her expert's report creates a genuine issue of material fact over whether the front cap issue is covered because he refers to "structural failures" and "unresolved structural/electrical issues." (ECF 49-5 at 1, 7). Though her expert, Mr. Paul, testified that the front cap issue was not structural, (ECF 40-7 at 52:25–53:3), she maintains that this is merely a "gaff[e]" stemming from Mr. Paul misinterpreting the question. But this does not seem likely. *See supra* note1. In any event, the Seventh Circuit has made clear that a later sworn statement contradicting deposition testimony may be disregarded at summary judgment. *LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) (stating that a plaintiff cannot survive summary judgment by contradicting deposition testimony with late-breaking

15

contradictory affidavits). Even if the Court were to disregard this contradiction, at most Mr. Paul opines that the RV has a "coach-body structural integrity defect at the front cap and adjoining coach interfaces . . . ." (ECF 49-6 at 10). He does not opine that this "coach-body structural integrity issue" implicates the "steel or aluminum frame structure" or the "exterior laminated surfaces" of the RV. Thus, his opinion does not create a dispute over whether the front cap issue falls within the terms of the warranty.

"Structural" is not a magic word. Its mere invocation does not call into existence a genuine issue of material fact where otherwise there would be none. The terms of the warranty govern this dispute, and the warranty unambiguously describes the range of defects it covers under the heading of "structural." The opinions of the Bloomers, an unnamed General RV technician, and Mr. Paul are only relevant to the degree they address that covered range of defects. Because Ms. Bloomer has produced no evidence supporting the contention that the RV's front cap issue falls within the range of defects covered by the warranty, summary judgment is appropriate on this issue.

### c. Failure to State a Claim

Thor also seeks summary judgment on the grounds that Ms. Bloomer has failed to allege facts sufficient to show that she gave Thor the opportunity to cure its alleged breach of warranty. The Court has determined as a matter of law both that Ms. Bloomer failed to exhaust her back-up remedy and that she has failed to produce evidence sufficient to permit a reasonable jury to find that her complaints fall within the terms of the terms of the warranty. Thus, there is no need to reach the issue of whether she gave

Thor sufficient chances to comply with the terms of the warranty before she filed this case.

### d. Implied Warranties

At the motion to dismiss stage, the Court dismissed Ms. Bloomer's warranty claims under the *Limited Warranty* as time-barred but determined that Ms. Bloomer had alleged sufficient facts to state a claim based on the *Structural and Lamination Limited Warranty*. Because it was "ambiguous as to whether, if at all," Ms. Bloomer's implied warranty claim was limited in duration by each warranty, Ms. Bloomer's *Structural and Lamination Limited Warranty* claim carried her implied warranty claim past the motion to dismiss. (ECF 10 at 11).

Now the Court has concluded both that Ms. Bloomer failed to exhaust her back-up remedy and that she failed to show a genuine issue of material fact sufficient to get her *Structural and Lamination Limited Warranty* claim past summary judgment. Specifically, the Court has determined that the front cap issue she alleges falls outside the scope of coverage of the *Structural and Lamination Limited Warranty*. And the *Structural and Lamination Limited Warranty* states that,

> [u]nless prohibited by law, the duration of any implied warranty of merchantability, which arises by operation of state law, is limited . . . in scope of coverage to the structure and laminated sidewalls of your motorhome.

(ECF 5-1 at 14 (appearing in uppercase boldface in original)).

Ms. Bloomer argues that because the Court found the express warranties to be ambiguous in their duration limitation of implied warranties, her implied warranty

claim cannot be held to the 12-month limitations period of the *Limited Warranty*. In support, she quotes the Court's explanation that "[b]oth the limited warranty and structural warranty limit the duration of a breach of implied warranty claim arising out of the purchase or operation of the motorhome." (ECF 50 at 16). This is right as far as it goes. But Ms. Bloomer errs when she concludes that because the Court found ambiguity, neither express warranty has the capacity to limit implied warranties. If Ms. Bloomer's claim fell within the scope of both warranties, ambiguity may have clouded the duration of the limitation period. But, as discussed above, factual development of her claim has shown that it does not fall within the terms of the *Structural and Lamination Limited Warranty*. And the *Structural and Lamination Limited Warranty* disclaims any implied warranties that fall outside its scope of coverage. *See Zastawnik v. Thor Motor Coach, Inc.*, 2025 U.S. Dist. LEXIS 52452, *21–22 (N.D. Ind. March 21, 2025). This means that only the *Limited Warranty* applies here. Thus, it is the limitation period of the *Limited Warranty* that governs Ms. Bloomer's implied warranty claims. As the Court has determined, that period lapsed before she filed this action. Accordingly, her implied warranty claims fail as a matter of law.

### e. Magnuson-Moss Warranty Act

Without a surviving warranty claim, Ms. Bloomer's claim under the Magnuson-Moss Warranty Act cannot reach a jury. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001).

### f.  Independent Breach of Contract

At the motion to dismiss stage, the Court determined that Ms. Bloomer's complaint "plausibly states an independent breach of contract claim that the limited warranty's and structural limited warranty's remedies failed of their essential purpose." (ECF 10 at 13). It was on that basis that Ms. Bloomer's independent breach of contract claim survived.

Independent breach-of-contract claims in this context play a back-up role to the "bargained-for remedy" provided in the warranty. *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 n.3 (Ind. 2019). The Indiana Supreme Court "envison[s] the buyer vindicating" their right to a bargained-for remedy that has failed of its essential purpose "through a breach-of-contract cause of action." *Id.* But as this Court has recognized before, a prerequisite to such a cause of action is that the bargained-for remedy fail of its essential purpose. *See Martin v. Thor Motor Coach*, 718 F. Supp. 3d 907, 918–19 (N.D. Ind. 2024). Because the Court has determined as a matter of law that the back-up remedy the parties agreed on was neither exhausted nor failed of its essential purpose, Ms. Bloomer's breach-of-contract claims cannot survive the dismissal of her warranty claims.

### g.  Spoliation, Fraud, and the Indiana Deceptive Consumer Sales Act

Lastly, Thor seeks summary judgment on Ms. Bloomer's allegations of spoliation, fraud, and violation of the Indiana Deceptive Consumer Sales Act. Because these counts contain common elements, the Court addresses them together.

19

Both warranties provide that General RV, "the dealer[,] is NOT [Thor's] agent." (ECF 5-1 at 10, 14). The warranty registration form signed by Ms. Bloomer confirms her understanding that General RV "is not an agent for [Thor], but is an independent entity." (ECF 40-1 at 82). And there is record evidence in the form of affidavits that General RV is not Thor's agent. (ECF 40-3 ¶ 16, ECF 40-4 ¶ 4). This fits with established case law that "[a]s a general rule, a dealer is not an agent for manufacturers of the products it sells." *Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009); *see also Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 363 (N.D. Ind. 2021).

Ms. Bloomer does not appear to dispute this. (*See* ECF 50 at 18 (characterizing Thor's argument that General RV was not its agent as a "red herring" but failing to dispute it)). Without evidence to the contrary, the Court concludes as a matter of law that General RV was not acting as Thor's agent.

With this established, the Court moves on to the substance of these claims. All three involve a General RV work order that Ms. Bloomer alleges was altered in a way that benefited Thor. The earliest entry in this work order, dated March 27, 2023, lists the cause of front cap flexing as "lack of structure support allowing fo [*sic*] cap to flex too much causing mounting srews [*sic*] to break, sipde [*sic*] cracks in front cap." (ECF 49-4 at 1). Later, an entry dated October 6, 2023, lists the cause of front cap flexing as "[c]ap has cracks from it not being secured properly causing the cap to flex while driving and made it crack." (*Id.* at 11). There is also a note in this entry stating, "REMOVED WRONG CLAIM." (*Id.*) It is the difference between these two entries that forms the basis for Ms. Bloomer's remaining claims.

1. *Spoliation*

Thor first seeks summary judgment on Ms. Bloomer's spoliation claim. In support, it argues that there is no evidence it spoliated evidence, and it is not liable if General RV spoliated evidence. It further argues that Ms. Bloomer suffered no damages from any alleged spoliation, and that Indiana does not recognize a claim for first-party spoliation of evidence anyway. Ms. Bloomer responds that she seeks not damages but only an adverse inference against Thor if it spoliated evidence.

It is not entirely clear what Ms. Bloomer is seeking here. Her claim is based on the allegation that Thor "altered the cause of the RV's Front Cap Loose and Flexing defect on the final repair order to remove any reference to 'lack of structural support' that was on the original repair order, and/or instructed its authorized and designated dealer General RV Center to do so." (ECF 35 ¶ 65). But she cites no evidence that the work order at issue was ever in Thor's possession. Nor does she cite any evidence that anyone at Thor instructed General RV to make any alteration to the work order. Instead, she asks the Court to find that because different pages of the work order say different things, and a Thor technician came out to General RV to work on the RV, a reasonable jury could conclude that Thor "sought to suppress" language in the work order that was not favorable to it. (ECF 50 at 22).

The Court declines to do so. Even if General RV made a change to the work order, it is not Thor's agent, and there is no evidence that Thor tampered directly or indirectly with the work order. Without any evidence supporting Ms. Bloomer's theory, such an inference would be improper. This claim cannot survive summary judgment.

### 2. Fraud

Next, Thor seeks summary judgment on Ms. Bloomer's fraud claim. Connecting this claim to Ms. Bloomer's spoliation claim, Thor again argues that there is no evidence repair records were altered, and even if General RV did alter its own records, General RV is not Thor's agent.

Fraud requires intentional misrepresentation of fact. *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 825 (Ind. Ct. App. 1993). Ms. Bloomer contends that a reasonable jury could infer from the language "REMOVED WRONG CLAIM" that Thor caused the removal of the statement that the front cap lacked a structural support. In support, she cites no evidence beyond the fact that a Thor technician worked on the RV. As discussed above, this is not enough to permit the inference that Thor caused the change in the work order. Without evidence that Thor was responsible for the alleged fraud, this claim cannot survive summary judgment.

### 3. The Indiana Deceptive Consumer Sales Act

Lastly, Thor seeks summary judgment on Ms. Bloomer's Indiana Deceptive Consumer Sales Act ("IDCSA") claim. Though her briefing on this subject is unclear at times, it seems Ms. Bloomer argues that her IDCSA claim must reach a jury because of the allegedly altered work order, Thor's allegedly faulty repair work, and Thor's alleged misrepresentation of the front cap issue as non-structural.

Ms. Bloomer's first argument fails to support her claim for the same reason her spoliation and fraud claims fail: there is no evidence that Thor altered the work order. Her second argument fails because it merely rehashes her other claims without setting

out a claim under the IDCSA. *See Litsinger*, 536 F. Supp. 3d at 361 (finding the IDCSA "requires more" than allegations of breached warranty because warranty breaches do not "mean that the supplier acted abusively or deceptively"). And her third argument fails because, as discussed above, Thor's position that the front cap issue was not structural was reasonable and in fact correct as defined by the relevant warranty. Thus, her IDCSA claim fails as a matter of law.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** Thor's motion for summary judgment. (ECF 40). The Clerk is **DIRECTED** to close this case.

SO ORDERED on June 17, 2026.

        /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

23